UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANTHONY PAUL HUEY,

> Plaintiff,

v.                                          CAUSE NO. 3:17-CV-655-DRL-MGG

DEPUTY EMMENDORFER, *et al.*,

> Defendants.

## OPINION & ORDER

Anthony Paul Huey is a prisoner who is proceeding in this case without a lawyer on three claims: (1) "against Deputy Emmendorfer and Deputy Carrico in their individual capacities for using excessive force in violation of the Fourteenth Amendment after he left the visitation room at the Saint Joseph County Jail on October 2, 2016" (ECF 16 at 5-6); (2) "against Deputy Emmendorfer and Deputy Carrico in their individual capacities for denying medical treatment in violation of the Fourteenth Amendment after he left the visitation room at the Saint Joseph County Jail on October 2, 2016" (*Id.* at 6); and (3) "against Deputy Kitchen in his individual capacity for failing to intervene to stop excessive force from being used against him in violation of the Fourteenth Amendment at the Saint Joseph County Jail on October 2, 2016" (*Id.*).

The defendants filed a summary judgment motion addressing all three claims. ECF 54. Mr. Huey filed a response and a cross-motion for summary judgment. ECF 59, 60. The defendants filed a reply and a response to the cross-motion. ECF 61. Mr. Huey has not filed a reply to support his cross-motion, and the time for doing so has since passed.

## STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying" the evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Substantive law determines which facts are material—that is, which facts might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In ruling on a motion for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The court will not "make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the court's sole task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne*, 337 F.3d at 770. If a reasonable factfinder could find in favor of the nonmoving party, summary judgment may not be granted. *Id.*

## DISCUSSION

A.    *Triable Issues Remain on the Excessive Force Claims.*

Guards may not use excessive force against pretrial detainees. *Kingsley v. Hendrickson*, 576 U.S. __; 135 S. Ct. 2466, 2473 (2015) ("pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."). Deputy Emmendorfer and Deputy Carrico argue the undisputed facts show the force they used against Mr. Huey after he left the visitation

room at the Saint Joseph County Jail on October 2, 2016 was reasonable. Mr. Huey argues the undisputed facts show the force they used was unreasonable.

Deputy Emmendorfer describes the event in his affidavit:

16.     After his visit, Plaintiff walked out of the visitation room to where I and my partner Deputy Carrico were standing. I attempted to secure Plaintiff by his belly chain, but Plaintiff pulled away from me and said "No, he [Deputy Carrico] can take me back."

17.     I told Plaintiff "No, that's not how it works" and I reached again for the belly chain.

18.     Plaintiff immediately resisted by pulling away and turning toward me in a very aggressive manner, he squared up with me; he leaned toward me as he did this; he was in a position where he could have lunged at me with his entire body or he could have kicked me.

19.     I felt threatened by Plaintiff's aggressive manner, and I felt that if control over Plaintiff was not obtained, he would be creating a danger, particularly since he was disregarding institutional procedures and there were other inmates present to witness his disruption, which could have escalated the situation.

20.     In order to gain control of the Plaintiff and situation, Deputy Carrico and I pushed Plaintiff up against the wall and performed a controlled leg sweep to take Plaintiff to the ground in a controlled manner.

21.     Deputy Carrico assisted me in holding onto Plaintiff while Plaintiff was being taken to the ground with the leg sweep.

22.     Deputy Carrico and I then held onto Plaintiff on the ground until Plaintiff stopped resisting us.

23.     Once Plaintiff stopped resisting, Deputy Carrico and I returned Plaintiff to his cell without any further incident.

24.     I believed that these actions were the least amount of force necessary in order to regain control of Plaintiff who was actively resisting.

ECF 55-1 at 2-3. In contrast, Mr. Huey responds in his declaration to Officer Emmendorfer with a different version of the event:

j. I aver that , contrary to the affidavit of Emmendorfer, and as claimed in my complaint, he did not say "No, that's not how it works" and reached "again" for the belly-chain I had on, but he (Emmendorfer) did not say anything and without any warning grabbed me, lifting me off of my feet slamming me up against the wall.

k. I aver that, contrary to the Affidavit of Emmendorfer, and as claimed in my complaint, I never resisted nor turned in an aggressive manner or even squared up to him leaning toward him in a position where I could have lunged at him with my entire body or kick him, instead, Mr. Emmendorfer without any provocation assaulted me as explained above in (J).

. . .

m. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, only Emmendorfer grabbed me lifting me off of my feet while slamming

me up against the wall, then he (Emmendorfer) shifted my weight throwing me to the floor with his full force and shortly sometime thereafter is where Carrico joined in on the vicious assault by kneeling with his full body weight on my back then striking me with blows to my neck, midriff and legs while I was restrained on the floor.

n. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, Carrico did not assist Emmendorfer in holding onto me while being taken to the ground with the leg sweep, for reasons that a leg sweep was never performed and I was thrown to the floor.

o. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, Carrico did not just hold onto me on the ground until I stopped resisting them because I never resisted Emmendorfer in the first place and once I was thrown to the floor it is then that Carrico shortly thereafter kneeled forcefully onto my back and hitting me repeatedly.

p. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, even while being assaulted on the floor by Carrico as Emmendorfer held me, that I wasn't resisting but yelling at the top of my lungs for them to stop hitting and twisting me limbs and asking for help until they stopped with the excessive use of force.

q. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, at no time did he (Emmendorfer) command me to him [sic] and I never resisted Emmendorfer, therefore no amount of force was necessary in order to regain control of me.

ECF 60-1 at 7-9 (citations and ellipsis omitted).

Deputy Carrico describes the event in his affidavit similarly to Officer Emmendorfer:

7.      Plaintiff came out of his visitation room and Deputy Emmendorfer attempted to secure Plaintiff by grabbing onto the belly chain.

8.      Plaintiff pulled away from Deputy Emmendorfer and looked at me stating, "I want you to take me back".

9.      I told Plaintiff, "No, Deputy Emmendorfer can take you back."

10.     Deputy Emmendorfer then went to reach for Plaintiff's belly chain again to secure Plaintiff, and Plaintiff again pulled away and turned toward Deputy Emmendorfer and made an aggressive move toward him; from my view, Plaintiff turned toward him, taking what appeared a fighting stance, or preparing to lunge into Deputy Emmendorfer.

11.     I felt Plaintiff's aggressive manner was threatening to Deputy Emmendorfer, and I felt that if control over Plaintiff was not obtained, he would be creating a danger to the institutional procedures, as there were inmates present to witness his disruption and potentially escalate the situation.

12.     Simultaneously, Deputy Emmendorfer and I then grabbed onto Plaintiff and took him down to the ground with a controlled leg sweep.

13.     We both gained control of Plaintiff and held him on the ground until he stopped physically resisting us.

14.     I believed that these actions were the least amount of force necessary in order to regain control of Plaintiff.

15. Once the resistance stopped, Deputy Emmendorfer and I escorted Plaintiff to his cell without further incident.

ECF 55-2 at 1-2. In contrast, Mr. Huey responds in his declaration to Officer Carrico with a different version of the event.

b. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, I did not pull away from Emmendorfer and looked at Carrico stating, " I want you to take me back," but in fact stood in front of Emmendorfer turning towards Kitchen to ask him if he would escort me back and Carrico was nowhere around me at that time.

c. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, he never said to me "No, Deputy Emmendorfer can take you back," because we never engaged into a conversation.

d. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, I did not pull away a second time either from Emmendorfer's reach of my belly-chain, then turning aggressively towards him, nor did I take a fighting stance, or preparing to lunge into him.

e. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, since I did not pull away from Emmendorfer, nor did I move in an aggressive manner; more importantly, I did not disobey any command given by anyone so there was not any need for anyone to feel threaten, or that things would get out of control nor was I creating a danger to institutional procedures and I wasn't being disruptive where a potential escalating situation was manifesting.

f. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, they (Emmendorfer and Carrico) did not simultaneously grab onto me and took me down to the ground with a controlled leg sweep, Carrico partook in the use of excessive force by kneeling onto my back in a malicious and/or sadistically wanton manner after Emmendorfer slammed me up against the wall then shifting me and my weight to the floor as it was then that Carrico vile actions started

g. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, they (Emmendorfer and Carrico) did not just gain control of me by holding me to the ground until I (allegedly) stopped physically resisting them for reasons that I never resisted anyone, and I was never given any command by any of the defendants to comply with anything nor were I just held on the floor by Carrico but physically assaulted by him.

h. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, Carrico believe that their actions were the least amount of force necessary in order to regain control of me; wherein, I never resisted any of the defendants nor were any commands given by any of the defendants therefore defendants not requiring any use of force as Carrico attempted in his affidavit to minimize the excessive use of force they used on me.

i. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, Carrico alleged that once the resistance stopped that Emmendorfer and himself escorted me back to my cell without further incident, notwithstanding that I never resisted but screamed my brain out for the beating and twisting of my limbs to stop as well as the need for someone to stop or intervene the use of excessive force.

ECF 60-1 at 10-12 (citations omitted).

The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011). The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. Genuine triable issues remain based on these competing affidavits about what happened after Mr. Huey left the visitation room at the Saint Joseph County Jail on October 2, 2016, so summary judgment cannot be granted for either party on this claim.

B.    *Triable Issues Remain on the Denial of Medical Treatment Claims.*

Denying a pretrial detainee medical treatment violates the Fourteenth Amendment if doing so qualifies as punishment. *Hardeman v. Curran*, 933 F.3d 816 (7th Cir. 2019). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quotation marks omitted). Punishment is proven by showing that the defendants "acted purposefully, knowingly, or perhaps even recklessly," and that the defendants' conduct was objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018).

Deputy Emmendorfer and Deputy Carrico argue that the undisputed facts show they were reasonable in not providing Mr. Huey medical care because they had no reason to believe he needed medical care after he left the visitation room at the Saint Joseph County Jail on October 2, 2016. Mr. Huey argues the undisputed facts show they were objectively unreasonable because he told them he needed medical care and he had visible injuries. The record presents triable issues on this claim.

In his affidavit, Deputy Emmendorfer explains why he did not believe Mr. Huey needed medical treatment:

> 25.     At no time in my presence did Plaintiff complain about any injury.
> 26.     At no time in my presence did Plaintiff  request to be seen by any healthcare professional.
> 27.     At no time in my presence did I see any physical injury to Plaintiff.

ECF 55-1 at 3-4. In contrast, Mr. Huey responds in his declaration to Officer Emmendorfer with a different description of his medical needs:

> r. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, once they (Emmendorfer and Carrico) stopped with the excessive use of force, I stated and complained about being in pain as there were visual signs of swelling on the side of my face coupled with my wrists being swollen.
> s. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, once they (Emmendorfer and Carrico) stopped with the excessive use of force, I also requested to be medically assessed.
> t. I aver that, contrary to the affidavit of Emmendorfer, and as claimed in my complaint, it should had [sic] at least been seen of the swelling of my wrist when the handcuffs were taken off as well as the swelling of my face.

ECF 60-1 at 9 (citations omitted).

In his affidavit, Deputy Carrico describes the medical issue exactly as did Officer Emmendorfer:

> 16.     At no time in my presence did Plaintiff complain about any injury.
> 17.     At no time in my presence did Plaintiff request to be seen by any healthcare professional.
> 18.     At no time in my presence did I see any physical injury to Plaintiff.

ECF 55-2 at 2. However, Mr. Huey's response in his declaration is quite different:

j. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, Carrico alleged that at no time in his presence did I request to be seen by any healthcare professional, when in fact I had made the request three (3) times: once right after the use of excessive force, then when the restrains were being removed and finally when the healthcare staff were making their rounds/tour in the area.

k. I aver that, contrary to the affidavit of Carrico, and as claimed in my complaint, Carrico alleged that at no time in his presence did he see any physical injury to me, when he should had at least seen the swelling of my wrists when the handcuffs were taken off, coupled with, the swelling of my face.

ECF 60-1 at 12 (citations omitted).

Because there are genuine disputes of the material facts about whether Mr. Huey had an objective need for medical treatment after he left the visitation room at the Saint Joseph County Jail on October 2, 2016, summary judgment cannot be granted for either party on this claim.

C.     *Triable Issues Remain on the Failure to Intervene Claim.*

State actors "who have a realistic opportunity to step forward and prevent a fellow [state actor] from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Failing to intervene to help a pretrial detainee violates the Fourteenth Amendment if doing so qualifies as punishment. *Cf. Hardeman v. Curran*, 933 F.3d 816 (7th Cir. 2019). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quotation marks omitted). Punishment is proven by showing that the defendants "acted purposefully, knowingly, or perhaps even recklessly," and that the defendants' conduct was objectively unreasonable. *Miranda v. Cty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018).

Deputy Kitchen argues the undisputed facts show he did not intervene because the use of force he witnessed by Deputy Emmendorfer and Deputy Carrico after Mr. Huey left the visitation

room at the Saint Joseph County Jail on October 2, 2016 was reasonable. Mr. Huey argues the undisputed facts show Deputy Kitchen stood idly by and watched while Deputy Emmendorfer and Deputy Carrico used excessive force against him. The record again presents triable issues. For instance, in his affidavit, Deputy Kitchen explains what he saw and why he did not intervene:

> 7. Plaintiff turned toward Deputy Emmendorfer making an aggressive move toward him; from my view, Plaintiff turned toward him, taking what appeared a fighting stance, or preparing to lunge into Deputy Emmendorfer.
> 8. Deputies Emmendorfer and Carrico then had to use force to gain compliance from Plaintiff.
> 9. I could not assist in the use of force because I had another inmate I was responsible for and it would have been improper for me to leave that inmate.
> 10. I also did not intervene in the use of force because from what I witnessed Deputies Emmendorfer and Carrico were handling the situation reasonably and only used the amount of force necessary to restrain Plaintiff and get Plaintiff to comply with the deputies' commands.

ECF 55-3 at 1-2. In contrast, in his declaration, Mr. Huey responds that Officer Kitchen should have recognized he was being subjected to excessive force and thus intervened to help:

> c. I aver that, contrary to the affidavit of Kitchen, and as claimed in my complaint, I did not make an aggressive move toward Emmendorfer, or turn toward Emmendorfer taking a fighting stance nor preparing to lunge into Emmendorfer.
> d. I aver that, contrary to the affidavit of Kitchen, and as claimed in my complaint, there was no need to gain my compliance because at no time did any of the Defendants instruct or had given me a command to do anything; however, I was brutally and [savagely] assaulted with excessive force by Emmendorfer and Carrico.
> e. I aver that, contrary to the affidavit of Kitchen, and as claimed in my complaint, Kitchen at the time of their (Emmendorfer and Carrico) use of excessive force, Kitchen did not possess another prisoner.
> f. I aver that, contrary to the affidavit of Kitchen, and as claimed in my complaint, Kitchen stood idly by watching Emmendorfer and Carrico excessive use of force as he failed to intervene to stop the excessive use of force.
> g. I aver that, contrary to the affidavit of Kitchen, and as claimed in my complaint, none of the Defendants gave a verbal command to me to perform a [sic] act, nor are there any commands listed in any of the Defendants' affidavits stating as to what commands were given and what command(s) I failed to perform.
> h. I aver that, contrary to the affidavit of Kitchen, and as claimed in my complaint, I yelled about my waist, wrists, arms, back, legs, and face, etc. hurting.

ECF 60-1 at 13-14 (citations omitted).

Because there are genuine issues of material facts about whether Deputy Kitchen punished Mr. Huey by failing to intervene to stop Deputy Emmendorfer and Deputy Carrico from using force against him after he left the visitation room at the Saint Joseph County Jail on October 2, 2016, summary judgment cannot be granted for either party on this claim.

D.    *Triable Issues Remain on Qualified Immunity.*

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, a plaintiff must show the deprivation of a constitutional right and "show that the right was clearly established at the time of the violation." *Id.* "A right is clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff does not need to point to a case "on all fours" with the defendant's alleged misconduct; rather, there must simply be "settled authority that would cause him to understand the illegality of the action." *Id.* (citations omitted).

The defendants' qualified immunity argument is based solely on their version of the facts:

> Deputies Emmendorfer and Carrico . . . believed there was a threat present and used the least amount of force necessary to effectuate control over Plaintiff who was actively resisting. As for Deputy Kitchen, he reasonably believed there was no duty for him to intervene based on the actions by Plaintiff and the reasonable actions he witnessed of Deputies Emmendorfer and Carrico.

ECF 55 at 18. However, the parties have divergent views as to the facts in this case, and "[t]he court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right] because the ordinary rules governing summary judgment apply in that situation." *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) (citations omitted). As previously explained,

crediting Mr. Huey's version of events, he has plausibly alleged facts that, if proven at trial, were clearly recognized as violations of the Fourteenth Amendment before October 2, 2016. Thus, none of the defendants can avoid trial on grounds of qualified immunity. *See, e.g., Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir. 2002) (recognizing that disputed material facts regarding the elements of a constitutional claim precludes dismissal based on qualified immunity).

## CONCLUSION

Because the record presents genuine issues of material fact on the three claims and qualified immunity defense, the court cannot grant summary judgment for any party. Accordingly, the court DENIES the motions for summary judgment (ECF 54 and 59).

SO ORDERED.

February 12, 2020                                    *s/ Damon R. Leichty*
                                                                  Judge, United States District Court